Filed 10/28/22

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | B313853 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA071988) |
| v. | |
| CYNTHIA M. VARGAS, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County.  Lee W. Tsao, Judge.  Affirmed.

David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Daniel Chang and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Cynthia M. Vargas appeals the denial of her petition for resentencing under Penal Code[1] section 1172.6 (former § 1170.95).[2]

## FACTS AND PROCEDURAL BACKGROUND[3]

On July 12, 2002, James Barbosa (James) walked to Rivera Park to meet his brother, John Barbosa (John), and Pedro Brache. None was a member of any gang. The park, however, was in territory claimed by the Rivera gang, of which Vargas was an associate or a full member, and her codefendant, Cesar Alcantar, and 15-year-old Daniel Luna were members. As James walked over to join John and Brache, Alcantar blocked his path and repeatedly asked him where he was from. James understood Alcantar was asking whether he was from another gang, and James responded he was not from anywhere, meaning he was not a gang member. But Alcantar accused James of lying and punched him in the jaw. James turned and walked away to avoid any further trouble, and Alcantar, Vargas and Luna went to the back of the park where they spray painted Rivera gang graffiti on a wall.

---

[1] Undesignated statutory references are to the Penal Code.

[2] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

[3] We have granted the parties' requests to take judicial notice of the record in the appeal from Vargas's conviction in case No. B175349. Included in that record is this court's prior opinion in that case, from which much of our factual summary is drawn. (*People v. Alcantar et al.* (Apr. 20, 2005, B175349) [nonpub. opn.]; *People v. Cruz* (2017) 15 Cal.App.5th 1105, 1110 [appellate opinion is part of the record of conviction].)

A few minutes later, Alcantar, Vargas and Luna again approached James as he was talking with John and Brache. Alcantar persisted in asking James where he was from and what he was called. James reiterated that he was not a gang member. Vargas, who was standing next to Alcantar, threw a tall beer can at James and said, "Damn," when it only skimmed the side of his head. Alcantar struck James again, and a fight ensued.

James, who was larger and stronger than Alcantar, pushed Alcantar to the ground and got on top of him. James felt two people hitting and kicking him while he was on top of Alcantar. John attempted to separate James and Alcantar, and pulled Vargas and Luna away as they struck and kicked James.

James continued to dominate the fight, and Vargas yelled to Luna, "Shoot. Shoot the motherfucker." A few seconds later Alcantar yelled, "Hurry up. Shoot this motherfucker." Luna pulled out a handgun, and John stepped between Luna and James. As John yelled, "Stop. Stop. No. No," Luna fired the weapon twice. One bullet struck John in the back. Luna then walked up to John and fatally shot him in the back of the head.

The three assailants ran away with James in pursuit. Vargas and Alcantar got into one vehicle, Luna another, and they all drove away. An eyewitness testified that if John had not stepped between Luna and James, Luna would have shot James in the back while James was on top of Alcantar.

Following a jury trial, Vargas and Alcantar were convicted of first degree murder (§ 187, subd. (a)) with findings as to each defendant that a principal used a firearm (§ 12022.53, subds. (d), (e)(1)) and that the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). The trial court sentenced each defendant to 60 years to life, consisting of 25

years to life for the first degree murder plus consecutive terms of 25 years to life for the firearm enhancement and 10 years to life for the gang enhancement.

On appeal from the judgment, this court ordered the 10-year gang enhancement stricken[4] but otherwise affirmed defendants' convictions. On remand the superior court modified Vargas's sentence to a term of 50 years to life.

Following the California Supreme Court's decision in *People v. Chiu* (2014) 59 Cal.4th 155, Vargas filed a petition for writ of habeas corpus in the superior court on the ground that she could not be convicted of murder in the first degree under the natural and probable consequences doctrine. Rather than retry the case, the People agreed to accept resentencing for second degree murder. The superior court vacated Vargas's first degree murder sentence and imposed a term of 40 years to life, consisting of 15 years to life for second degree murder plus 25 years to life for the firearm enhancement.

---

[4] The parties agreed that because Vargas and Alcantar were convicted of first degree murder and sentenced to 25 years to life in prison, a determinate enhancement under section 186.22, subdivision (b) could not be applied, and because a section 12022.53, subdivision (d) enhancement was imposed pursuant to section 12022.53, subdivision (e), although neither appellant personally used or discharged a firearm in the commission of the murder, no section 186.22, subdivision (b) enhancement could be imposed.

4

Shortly after Senate Bill No. 1437 became effective, Vargas filed her petition for resentencing pursuant to section 1172.6.[5] The superior court summarily denied the petition without appointing counsel. We reversed and remanded the matter to the superior court for further proceedings, including the appointment of counsel for Vargas and briefing by the parties in accordance with section 1172.6, subdivision (c). (*People v. Vargas* (July 13, 2020, B297115) [nonpub. opn.].)

On remand, the trial court issued an order to show cause and held an evidentiary hearing. The People offered no argument in opposition to the petition, and neither party presented new evidence, submitting instead on the record of conviction. Defense counsel argued that the prosecution's case was built entirely on a natural and probable consequences theory supported by unreliable eyewitness statements identifying Vargas as one of the participants who called for the shooting.

After reviewing the trial transcripts and hearing argument by defense counsel, the trial court denied the petition, finding that "the People have met their burden of proving beyond a reasonable doubt that Ms. Vargas aided and abetted the first

---

[5] In the same petition, Vargas also asked the court to strike the related firearm enhancement under section 1385 based on section 12022.53, subdivision (h) as amended by Senate Bill No. 620. On remand, however, Vargas did not renew her request, the superior court did not address it below, and Vargas's appellate briefs contain no reference it. We therefore deem the issue abandoned. (See *People v. Ramirez* (2006) 39 Cal.4th 398, 450 [failure to press lower court for a ruling deprives that court of opportunity to correct potential error and forfeits the issue for appeal]; *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1247–1248.)

5

degree premeditated murder of John Barbosa." The court explained, "While there were some issues of identification with respect to each witness, altogether, they leave no reasonable doubt that it was Ms. Vargas who said, 'Shoot him.' Those words, together with Mr. Alcantar's plea of 'shoot him,' led Daniel Luna to pull out his gun and fatally shoot John Barbosa."

## DISCUSSION

### The Trial Court's Conclusion that Appellant Is Ineligible for Relief Under Section 1172.6 Is Supported by Substantial Evidence

#### A. *Applicable legal principles*

The Legislature enacted Senate Bill No. 1437 to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To accomplish this objective, Senate Bill No. 1437 amended section 188, defining malice, and section 189, which classifies murder into two degrees and lists the predicate felonies for the crime of first degree felony murder. (Stats. 2018, ch. 1015, §§ 2, 3; *People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)

Senate Bill No. 1437 and its amendment to section 188 eliminated potential aider and abettor liability for first or second degree murder under the natural and probable consequences doctrine by requiring that a principal "act with malice aforethought" in order to be convicted of murder; there is no exception for accomplices. (§ 188, subd. (a)(3); *People v. Gentile* (2020) 10 Cal.5th 830, 846 (*Gentile*).) "By its terms, section 188[,

6

subdivision (a)(3)] permits a second degree murder conviction only if the prosecution can prove the defendant acted with the accompanying mental state of mind of malice aforethought. The prosecution cannot 'impute[] [malice] to a person based solely on his or her participation in a crime.' " (*Gentile*, at p. 846, quoting § 188, subd. (a)(3).)

Section 1172.6 provides a mechanism by which a person convicted of murder under a natural and probable consequences theory may be resentenced if they could no longer be convicted of murder because of the changes to section 188. (*People v. Strong* (2022) 13 Cal.5th 698, 708; § 1172.6, subd. (a)(3).) Once a petitioner establishes a prima facie case for relief and the superior court issues an order to show cause, the matter proceeds to an evidentiary hearing at which it is the prosecution's burden to prove beyond a reasonable doubt that the petitioner is ineligible for resentencing. (*Strong*, at pp. 708–709; § 1172.6, subd. (d)(3).) If the superior court finds beyond a reasonable doubt that the petitioner is guilty of murder notwithstanding the amendments to sections 188 and 189, the petitioner is ineligible for relief under section 1172.6. (*Strong*, at pp. 708–709; § 1172.6, subds. (a)(3) & (d)(3).)

While the superior court acts as an independent fact finder in determining whether the People have met their burden, on appeal, the reviewing court applies the substantial evidence standard to the superior court's findings. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745, 747 (*Garrison*).) Under this familiar standard, " 'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact

could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Edwards* (2013) 57 Cal.4th 658, 715; *People v. Nieber* (2022) 82 Cal.App.5th 458, 476.) Substantial evidence also " 'includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 57; *Nieber*, at p. 476.)

**B. *Substantial evidence supports the trial court's finding that appellant is guilty of murder under a theory that remains valid after the amendments to California's murder laws.***

The trial court denied the petition for resentencing because it found appellant aided and abetted a first degree premeditated murder. The court explained that the evidence presented at trial left no reasonable doubt that appellant's command to "Shoot. Shoot the motherfucker," and Alcantar yelling, "Hurry up. Shoot this motherfucker," directly led "Luna to pull out his gun and fatally shoot John Barbosa."

Both parties read the court's ruling to mean that the trial court held appellant ineligible for relief under section 1172.6 because it found *her* guilty of first degree premeditated murder. Appellant does not dispute that *Luna's* killing of John constituted a willful, deliberate and premeditated murder, but argues that substantial evidence does not support a finding that she had the requisite intent to kill John. Respondent counters that

8

substantial evidence supports the finding that appellant directly aided and abetted the murder *with the intent to kill*.

Both parties misconstrue the basis for the trial court's ruling: To find appellant ineligible for relief under section 1172.6, the court needed only find appellant acted with implied malice in directly aiding and abetting the killing. Contrary to the parties' arguments, the trial court did not find appellant guilty of first degree premeditated or express malice murder, but denied relief because she directly aided and abetted one.

At an evidentiary hearing under section 1172.6, subdivision (d)(3), the trial judge is charged with determining, beyond a reasonable doubt, if the petitioner is guilty of murder under a theory that remains valid after the amendments to the substantive definition of murder. (*Garrison*, *supra*, 73 Cal.App.5th at p. 745; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 984; *People v. Clements* (2022) 75 Cal.App.5th 276, 298.) Although the parties may offer new or additional evidence to meet their respective burdens, section 1172.6, subdivision (d)(3) does not contemplate a whole new trial on all the elements of murder. (*Clements*, at p. 298.) Rather, "[t]he retroactive relief provided by [former] section 1170.95 is a legislative 'act of lenity' intended to give defendants serving otherwise final sentences the benefit of ameliorative changes to applicable criminal laws and does not result in a new trial or increased punishment." (*People v. Hernandez* (2021) 60 Cal.App.5th 94, 111; see *People v. Perez* (2018) 4 Cal.5th 1055, 1064 ["a factual finding that results in resentencing ineligibility does not increase the petitioner's sentence; it simply leaves the original sentence intact"].) Thus, the focus at the evidentiary hearing phase of an 1172.6 petition is "on evidence made relevant by the amendments to the

substantive definition of murder," which, in the context of section 188, requires "the prosecution to prove that all principals to a murder acted with malice aforethought." (*Clements*, at p. 298; § 188, subd. (a)(3).)

In conducting our substantial evidence review, we begin with the presumption that the evidence was sufficient to support the trial court's ruling. "Before setting aside the judgment of the trial court for insufficiency of the evidence, it must clearly appear that there was no hypothesis whatever upon which there was substantial evidence to support the verdict." (*People v. Fleming* (2018) 25 Cal.App.5th 783, 789; *People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) "Second degree murder is the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder." (*People v. Knoller* (2007) 41 Cal.4th 139, 151.) Malice may be express or implied. (§ 188, subd. (a).) It is express when there is manifested an intent to kill. (§ 188, subd. (a)(1); *People v. Gonzalez* (2012) 54 Cal.4th 643, 653.) "Malice is implied when a person willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses." (*Gonzalez*, at p. 653.) "The primary difference between express malice and implied malice is that the former requires an intent to kill but the latter does not." (*People v. Soto* (2018) 4 Cal.5th 968, 976.)

Before the Legislature amended section 188, the natural and probable consequences doctrine constituted an exception to

the requirement of either express or implied malice for a murder conviction. (*People v. Rivera* (2021) 62 Cal.App.5th 217, 231 (*Rivera*).)  Now, since the amendment, the natural and probable consequences doctrine can no longer support a murder conviction, but the change did not "alter the law regarding the criminal liability of direct aiders and abettors of murder . . . .  One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law."**6**  (*People v. Offley* (2020) 48 Cal.App.5th 588, 595–596; *People v. Jenkins* (2021) 70 Cal.App.5th 924, 932 ["The direct aider and abettor of murder, like the direct perpetrator, must act with malice"].)

"[P]roof of aider and abettor liability requires proof in three distinct areas:  (a) the direct perpetrator's actus reus—a crime

---

**6** Although implied malice also incorporates the idea of "natural and probable consequences," the two concepts are distinct.  Under the natural and probable consequences doctrine, an aider and abettor's intent with regard to the nontarget offense is irrelevant:  Liability results entirely from the direct perpetrator's acts and intent in committing the nontarget crime—including an unintended murder—as long as the accomplice intended to commit the target offense and the nontarget offense was reasonably foreseeable. (*People v. Smith* (2014) 60 Cal.4th 603, 611 [" 'liability " 'is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted' " ' "]; *Rivera*, *supra*, 62 Cal.App.5th at pp. 231–232.)  Implied malice, on the other hand, is based upon the natural and probable consequences of a defendant's *own* act committed with knowledge of and disregard for the risk of death the act carries. (*People v. Knoller*, *supra*, 41 Cal.4th at pp. 151–152; *Rivera*, at p. 231.)

committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime." (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.)

"In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act." (*People v. Powell* (2021) 63 Cal.App.5th 689, 713, fn. omitted (*Powell*).)

As for the requisite intent, our Supreme Court has explained that "an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*Gentile, supra*, 10 Cal.5th at p. 850.) The aider and abettor "need only intend the commission of the perpetrator's *act*, the natural and probable consequences of which are dangerous to human life, intentionally aid in the commission of that *act* and do so with conscious disregard for human life." (*Powell, supra*, 63 Cal.App.5th at p. 714.)

Here, substantial evidence supports the trial court's finding that appellant acted with implied malice to directly aid and abet the murder. The evidence presented at trial established that from the beginning, Vargas was inextricably involved in the events that led to the murder and she was directly responsible for

prompting Luna to shoot and kill John. Alcantar and Luna were both members of the Rivera criminal street gang, and appellant was at least an associate of that gang. The murder occurred at a park in territory claimed by the Rivera gang, and Vargas, Alcantar and Luna were there together drinking beer and spray painting gang graffiti on a wall. Vargas stood next to Alcantar as he challenged James and punched him in the face. When the three approached James again, it was Vargas who initiated a physical confrontation by throwing a beer can at James's head. Once the fight between Alcantar and James escalated, Vargas joined in kicking and punching James when he got on top of Alcantar. Vargas was certainly aware of John's proximity to and participation in the fight when he attempted to pull Vargas and Luna away from James. Moreover, Vargas obviously knew Luna was armed with a loaded gun when she ordered Luna to "Shoot. Shoot the motherfucker." Luna did as he was directed and shot into the brawl, striking John in the back and incapacitating him. While John attempted to stand up, Vargas stood by and watched Luna walk over to shoot John in the back of the head. Only then did Vargas and her cohort run away.

Even if these circumstances did not establish express malice on appellant's part, they certainly constitute sufficient evidence upon which the trial court could find, beyond a reasonable doubt, that appellant acted with implied malice in aiding and abetting the murder. (See *People v. Garcia* (2008) 168 Cal.App.4th 261, 273 ["Factors to be considered by the trier of fact in determining 'whether one is an aider and abettor include presence at the scene of the crime, failure to take steps to attempt to prevent the commission of the crime, companionship, flight, and conduct before and after the crime' "].)

13

As set forth above, the essence of aiding and abetting a murder under an implied malice theory is the accomplice's act of aiding, by words or conduct, the commission of a life-endangering act with knowledge of the danger to life that the act poses. (*Powell*, *supra*, 63 Cal.App.5th at p. 714.) Such an aider and abettor need not intend to aid a killing to be held criminally liable for the result of the perpetrator's act. (*Gentile*, *supra*, 10 Cal.5th at p. 850; *Powell*, at p. 713.) Appellant knew that firing a gun into a brawl could ultimately result in someone's death, but she directed Luna to do it anyway. She did not object when Luna walked over to John and finished what she had started, nor did she try to stop him. Substantial evidence supports the trial court's finding that appellant is guilty of murder under a still-valid theory following the Legislature's amendments to section 188.

**DISPOSITION**

The trial court's order denying Vargas's petition for resentencing under Penal Code section 1172.6 is affirmed. CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.